53 CCPA

**CUMMINS ENGINE COMPANY, Inc., Appellant,**

v.

**CONTINENTAL MOTORS CORPORA- TION, Appellee.**

**Patent Appeal No. 6961.**

United States Court of Customs and Patent Appeals.

May 12, 1966.

Smith, J., dissented.

George N. Hibben, Chicago, Ill., Francis D. Thomas, Jr., Washington, D. C., for appellant.

Nims, Halliday, Whitman, Howes & Collison, New York City (Walter J. Halliday, William H. Buchanan, New York City, Robert C. Hauke, Southfield, Mich., of counsel), for appellee.

Before RICH, Acting Chief Judge, MARTIN, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

MARTIN, Judge.

This is an appeal from decisions of the Trademark Trial and Appeal Board [1]

granting a petition to cancel Reg. No. 629,304 for "TURBODIESEL," issued June 19, 1956 on the Supplemental Register for internal combustion engines and parts thereof.[2] Cummins Engine Co. (Cummins) owns the mark.

The parties are competitors in the manufacture and sale of internal combustion engines of the compression ignition type, namely, diesel engines, and particularly diesel engines having an exhaust driven turbine supercharger. Continental petitioned for cancellation of Cummins' registration on the grounds, inter alia, that the word "turbodiesel," composed from individually generic words "turbine" (in its combining form "turbo") and "diesel," is "incapable of properly denoting origin of manufacture, and is therefore without trademark significance." Continental (petitioner-appellee) also alleges that "turbodiesel" has been used as "generically descriptive" of such type of engines prior to December 20, 1954, the date of first use alleged by respondent-appellant Cummins in the trademark registration.

While the main issue here is whether "turbodiesel" is incapable of distinguishing appellant's goods and thereby barred from registration under section 23 of the 1946 Lanham Trade-Mark Act, 15 U.S.C. § 1091, we are presented with a preliminary issue of which of appellee's 351 documentary exhibits properly can be considered by us in resolution of the main issue.

Appellant Cummins' initial application of February 17, 1955 sought registration on the Principal Register. Registration was refused by the examiner on the ground that the mark was merely descriptive. Following final refusal and just prior to expiration of the time in which to appeal, appellant sought to amend the application to convert to registration on the Supplemental Register,

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. 132 USPQ 557 (TT&AB 1962), on reconsideration 144 USPQ 775 (TT&AB 1964).

2. Cancellation Proceedings No. 7,118.

pursuant to then Rule 13.5. The paper seeking to amend, signed only by the attorney, was filed December 22, 1955, but being apparently delayed within the Patent Office, was given a date of May 17, 1956. A conversion amendment signed by applicant (appellant) was also submitted on January 5, 1956. The prosecution proceeded in due course with issuance of the registration followed by the cancellation proceeding and a board decision (fully reported at 132 USPQ 557), that was timely appealed to this court. The board, upon consideration of evidence up to May 17, 1956, held, inter alia, that "as the common descriptive name for a particular kind or class of engines, 'TURBODIESEL' falls within the category of words, symbols and devices which are not subject to exclusive appropriation as trademarks" and it, therefore, granted the petition for cancellation.

Subsequently there was much prosecution history concerning which conversion date appellant is to be accorded.[3] Appellant has dropped all attempts to be accorded the date of February 17, 1955, to which it would have been entitled had the original application conformed to then Rule 13.5 as sufficient for registration on the register to which converted. The argument is over whether the December 22, 1955 or January 5, 1956 date is the conversion date, and consequently whether we are to consider an additional two exhibits having dates falling between December 22 and January 5. Appellant urges December 22, 1955 as the proper date, stating:

> * * * Despite a ruling to the contrary by the Commissioner of Patents (Supp. Tr. 25), Appellant believes that the effective filing date of its registration should be December 22, 1955, which would remove these two exhibits [advertisements by Waukesha Motor Co. employing the term "TURBODIESEL"] from consideration under Sec-

tion 24 of the Trademark Act of 1946 [15 U.S.C. § 1092].

We find it unnecessary to decide that issue since we assume arguendo the correct date to be December 22, 1955, yet find in the remaining 32 prior exhibits in the record abundant evidence indicating the mark in issue is incapable of distinguishing appellant's goods, pursuant to section 24.

We rely primarily upon the 1935 Funk & Wagnalls New Standard Dictionary definitions of "turbine," its combining form "turbo," and of "diesel," and a March 1953 "Flight" magazine article, all of which are reproduced in the board's decision as reported, 132 USPQ at 557. In our view, the definitions alone indicate that "turbodiesel" is a word which by its nature will convey a specific and correct meaning which is such that it cannot become a trademark as a result even of origination and first use. See Scholler Bros. v. Hans C. Bick, Inc., 110 USPQ 431 (Com'r Pats. 1956). The term "turbodiesel," as we see it, is a natural composite form for a class of engines into which appellant's engines fall. We recognize that the engines to which the term has been applied by appellant are not turbines plus diesels, but diesel engines *having exhaust driven turbine superchargers.* However, it is not required that the name precisely describe and define the goods in order to be incapable of registration under section 23. We think "turbodiesel," to be naturally and adequately nominative of engines having exhaust driven turbine superchargers.

In March 1953, the "Flight" magazine referred specifically to the names "turbo-C.I." and "turbo-diesel" and raised the question as to which name would be applied to a "Nomad compounded engine," as follows:

> No class name has yet been given to the Nomad compounded engine—in time such names as turbo-C.I. (which

3. This includes a second board decision, 144 USPQ 775, that, pursuant to a decision, and reconsideration, of the Commissioner on remand from this court, came to the same result as that in 132 USPQ 557 as based on evidence available up to January 5, 1956.

895 is used in our leading article) or turbo-

is used in our leading article) or turbo-diesel, may find approval.

The Nomad engine pictured and discussed in "Flight" magazine is a diesel engine with a gas turbine. Its performance is compared with a turbojet, a turboprop and a piston engine, and comparative statistics are given. We view that use of the term "turbodiesel" as exemplary of the view we have expressed above, that such term would be recognized as a natural composite term for designating such engines.

We consider the following cases, among others, to support our view herein: In re Bailey Meter Co., 102 F.2d 843, 26 CCPA 1136; Ex Parte Bailey Meter Co., 93 USPQ 179 (Com'r Pats. 1952); Ex parte Bailey Meter Co., 93 USPQ 385 (Com'r Pats. 1952); Bailey Meter Co. v. Watson, 122 F.Supp. 627 (D.C.D.C.1954); Ex parte Le Blond, 98 USPQ 416 (Com'r Pats. 1953); Ex parte The Texas Co., 12 USPQ 58 (Com'r Pats. 1932), and *Scholler Bros.*, supra. We do not find the term here to be such a deviation from a natural usage or an unusual unitary combination as to permit registration, in contrast to the terms in In re Ada Milling Co., 205 F.2d 315, 40 CCPA 1076, and Alumatone Corp. v. Vita-Var Corp., 183 F.2d 612, 37 CCPA 1151.

Appellant also questions the right of appellee to petition for cancellation of this mark because appellee was not using the term as a trademark nor did it comtemplate doing so, and alleging that under these circumstances appellee had not been damaged. We think the statute provides appellee's standing in this cancellation proceeding. Section 24 states, in pertinent part:

Sec. 24 (15 U.S.C. § 1092). Supplemental register—Marks not published for opposition—Cancelation

* * * Whenever any person believes that he is or will be damaged by the registration of a mark on this register he may at any time, upon payment of the prescribed fee and the filing of a verified petition stating the ground

therefor, apply to the Commissioner to cancel such registration. * * * If it is found after a hearing before the Board that the registrant was not entitled to register the mark at the time of his application for registration thereof, or that the mark is not used by the registrant or has been abandoned, the registration shall be canceled by the Commissioner. * * *

Appellee as a competitor of appellant clearly has reason to believe it will be damaged to the extent required by statute.

Appellant also complains that it has made extensive use of this term, has spent large sums of money in promoting its goods and that it uses this term in connection with its promotion and advertising. Appellant further states it estimates that it has spent approximately $400,000 in promoting "TURBODIE-SEL" engines in trade advertising. With reference to this matter, we agree with the board wherein it stated, 132 USPQ at 560:

* * * And while respondent has made extensive use of this term and has expended a large sum in promoting its goods in connection with which this term has been used, the Court in Weiss Noodle Company v. Golden Cracknel and Specialty Company, * * * [48 CCPA 1004, 290 F.2d 845, 129 USPQ 411]; when presented with a similar argument, aptly stated "While it is always distressing to contemplate a situation in which money has been invested in a promotion in the mistaken belief that trademark rights of value are being created, merchants act at their peril in attempting, by advertising, to convert common descriptive names, which belong to the public, to their own exclusive use".

For the above reasons we affirm the decisions of the board.

Affirmed.

SMITH, Judge (dissenting).

The issue here litigated is whether on the present record the mark "turbodiesel" was incapable of distinguishing appel-

lant's goods. Trade-Mark Act of 1946, sections 23, 24 (15 U.S.C. §§ 1091, 1092).

The composite mark "turbodiesel" is derived from the terms "turbine," its combining form "turbo," and of "diesel" and was registered on the supplemental register for "internal combustion engines and parts thereof." The mark has been applied to diesel engines having exhaust gas driven turbine type superchargers as an accessory supercharger to increase the effectiveness of the basic diesel engine.

Considering the dictionary definitions of "turbine," "turbo," and "diesel," alone, appellee clearly must fail in its burden of proof that the registered composite term is incapable of distinguishing appellant's goods. The composite mark, coined as it is from the above terms, is not the common name for either the goods for which it is registered or the goods upon which the mark is used. "Turbodiesel," considering the definitions relied on by the majority, conveys the meaning of a turbine combined with a diesel. There is not even a hint in this combined term that a supercharger element is involved.

As I view the matter, and the majority agrees, appellee's case stands or falls on the evidence bearing upon the meaning of the mark. In my opinion, contrary to the majority's conclusion, it falls short of establishing that the mark "turbodiesel" was the common name for diesel engines having exhaust gas driven turbine type superchargers. The evidence produced by appellee falls far short of discharging what seems to me to be appellee's burden of proof in this proceeding. The evidence relied on by the appellee establishes that the term was used as a trademark and in a trademark sense in nearly all instances. The majority opinion I believe errs in treating the use of the term in this manner as the common name of the product. Manifestly, when the mark is capitalized and identifies appellant's goods, an accurate technical description of the goods need not be coupled with each use of the mark.

I am unable to see how the majority is supported in its result by the authorities cited. The *Bailey Meter* cases, supra, decided that "Boiler Meter" for boiler meters was the name of the device and therefore not registrable. In *Scholler Bros.*, supra, it was held that "Nylonized" for the treatment of fabrics with an emulsion of nylon lacked trademark significance. These cases do not seem to be germane on the issue here.

I therefore dissent from the majority decision.